UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY GANT-HOLMES,

          Plaintiff,          Civil Action No. 18-12264
                                         Honorable Gershwin A. Drain
                                         Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 14]**

Plaintiff Mary Gant-Holmes ("Gant-Holmes") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #12, #14), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Gant-Holmes is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #14**) be **GRANTED**, Gant-Holmes's Motion for Summary Judgment (**Doc. #12**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II. REPORT

### A. Background

Gant-Holmes was 59 years old at the time of her alleged onset date of July 15, 2013, and at 5'6" tall weighed approximately 196 pounds during the relevant time period. (Tr. 207). She received her GED in 1990. (Tr. 36, 208). She reported previous work as a babysitter, cashier, factory assembler, factory utility worker, and resident care in a nursing facility. (Tr. 37-39, 209). She now alleges disability primarily as a result of spinal stenosis with chronic back pain, uncontrolled type II diabetes, depression, and hypertension. (Tr. 207).

After Gant-Holmes's applications for DIB and SSI were denied at the initial level on November 18, 2015[1] (Tr. 81, 89), she timely requested an administrative hearing, which was held on June 2, 2017 before ALJ Thomas L. Walters. (Tr. 32-47). Gant-Holmes, who was represented by attorney[2] Samuel Earley, testified at the hearing, as did vocational expert Heather Benton. (*Id.*). On August 21, 2017, the ALJ issued a written decision finding that Gant-Holmes is not disabled under the Act. (Tr. 15-25). On May 16, 2018, the Appeals Council denied review. (Tr. 1-3). Gant-Holmes timely filed for judicial review of the final decision on July 9, 2018. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Gant-Holmes's medical record, function and disability Reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

---

[1] *See also* Disability Determination Explanation, dated November 17, 2015. (Tr. 48-57, 58-67).

[2] The ALJ's Decision states that Mr. Earley is a non-attorney representative (Tr. 15), but there are indications elsewhere in the record that Mr. Earley is an attorney. (*See* Tr. 32).

## B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Gant is not disabled under the Act.  At Step One, the ALJ found that Gant-Holmes has not engaged in substantial gainful activity since July 15, 2013 (the alleged onset date).  Although she worked after the alleged onset date, the ALJ found that the attempt was unsuccessful.  (Tr. 17-18).  At Step Two, the ALJ found that she has the severe impairments of spinal stenosis, diabetes mellitus (type II), obesity, and depression.  (Tr. 18).  At Step Three, the ALJ found that Gant-Holmes's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (*Id.*).

The ALJ then assessed Gant-Holmes's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations:  simple, routine, and repetitive work instructions, no exposure to moving machinery or unprotected heights, only occasional bending, turning, crouching, stooping, climbing, crawling, and kneeling, and that she cannot walk more than two city blocks at any given time.  (Tr. 20-24).

At Step Four, the ALJ found that Gant-Holmes is capable of performing her past relevant work as an inspector/hand packager.  (Tr. 24).  As a result, the ALJ concluded that Gant-Holmes is not disabled under the Act.  (Tr. 24-25).

**C.     Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

4

adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D. Analysis**

In her motion for summary judgment, Gant-Holmes argues that: (1) the ALJ's RFC finding is not supported by substantial evidence because the ALJ failed to support his RFC decision with at least one medical opinion; and (2) the ALJ erred in failing to include an explicit function-by-

function assessment of Gant-Holmes's physical[3] and mental capability in his RFC finding.  (Doc. #12 at 12-19).  Each argument is addressed below.

### 1. The ALJ's RFC Finding is Supported by Substantial Evidence

As set forth above, the ALJ found that Gant-Holmes retains the RFC to perform light work except she can perform only simple, routine, and repetitive work instructions, she can have no exposure to moving machinery or unprotected heights, and she can occasionally bend, turn, crouch, stoop, climb, crawl, and kneel, and cannot walk more than two city blocks at a time. (Tr. 20). The ALJ noted medically determinable impairments could reasonably be expected to produce Gant-Holmes's alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical and other evidence on the record.  (Tr. 21).  First the ALJ noted that, as to her back pain, Gant-Holmes alleges that she has been in constant pain since July 2013 (*id.*), but her treatment notes show that she did not report her back pain to a clinician until mid-July 2014, stating that her pain had started one week prior.  (Tr. 21, 286).  After an MRI, x-ray, and physical examination showing normal findings, she was referred to physical therapy and prescribed pain relief medication, but she did not attempt physical therapy.  (Tr. 286-289, 329, 332-336).  She did not report issues with her back again until April 2015.  (Tr. 262-266).  She was again referred to physical therapy and/or a pain clinic, but attended neither.  (Tr. 265-66).  In January 2016, she presented to the emergency department with severe back and sciatic pain.  (Tr. 400-404).  Her examination noted tenderness to palpation over her posterior right buttocks and area of her right sciatic notch, mild tenderness over her right SI

---

[3] The Commissioner argues that, despite stating at the outset of her brief that the ALJ did not do a proper function-by-function analysis for her physical and mental RFC, Gant-Holmes only addresses the ALJ's purported failure to provide a mental function-by-function analysis.  While the Commissioner is correct, the Court will address both physical and mental function-by-function arguments together nonetheless.

6

joint, minimal tenderness to palpitation over her lower lumbar spine. (Tr. 400). On a follow-up appointment with her provider, Dr. Lorna Pinson, she reported "generalized lower right paraspinal tenderness," and was again referred to physical rehabilitation. (Tr. 407-408). In September 2016, at an appointment with Dr. AbouChakra, she reported back pain "for the past year" with her severity level for back pain as "mild-moderate" and "intermittent[]. (Tr. 442). She reported that she had not undertaken any physical therapy or other treatment such as injections or manipulations for her back pain. (*Id.*). Her physical examination showed pain in her sacroiliac joint, but had normal results for straight leg raise tests, a normal gait, and no tenderness. (Tr. 447-448). Dr. AbouChakra recommended a "comprehensive physical therapy program to assist her with her pain and function." (Tr. 448). On a return visit to Dr. AbouChakra, in February 2017, she reported that she attended one physical therapy visit, which intensified her pain, and that she did not continue. (Tr. 484). Dr. AbuChakra recommended lumbar epidural steroid injections. (Tr. 489).

In formulating Gant-Holmes's RFC, the ALJ gave some weight to the opinion of Dr. David A. Harley, PhD. (Tr. 23, 53). Dr. Harley's opined that Gant-Holmes's depression is non-severe, and provided no RFC restrictions. (Tr. 23, 53). The ALJ, however, found that Gant-Holmes ability to concentrate, persist, and maintain pace is more limited than Dr. Harley opined. (Tr. 24). Specifically, the ALJ noted Gant-Holmes's report that she sometimes has to re-read instructions in order to follow the appropriately, and that when depressed, he stopped checking her blood sugar and taking certain of her prescription drugs. (Tr. 24, 223, 458). Additionally, in assessing Gant-Holmes's RFC, the ALJ cited to her reported daily activities, which include caring for her two younger grandchildren on a "full-time basis" while her daughter is at work, and maintaining custody of her thirteen-year-old grandson. (Tr. 22, 36, 37). In short, contrary to Gant-Holmes's argument that "[t]he ALJ merely summarized the medical evidence as his explanation for

7

supporting his RFC determination" (Doc. #12 at 16), the ALJ properly formulated Gant-Holmes's RFC based on the relevant evidence in the record.

Gant-Holmes's first challenge to the ALJ's RFC finding is that he was required to have relied on at least one medical opinion. (Doc. #12 at 11-13). Specifically, Gant-Holmes argues that the only opinion from a medical professional was from Dr. Harley, a non-examining psychological state-agency consultant. (*Id.*) She argues that doing so is harmful error because the determination must be supported by at least one medical opinion. (*Id*. at 12). Gant-Holmes's argument is legally incorrect, as the law is clear that the ALJ is *not* required to base an RFC upon a physician-determined one. *See Sparrow v. Comm'r of Soc. Sec.*, 2016 WL 1658305, at *7 (E.D. Mich. Mar. 30, 2016). Indeed, *Sparrow* concisely summarized the issue:

> The Commissioner is tasked with establishing a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 416.945. However, the Commissioner is not obligated to base this RFC upon a physician's RFC, or upon any particular piece of evidence. "[T]o require the ALJ to base her RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 728 (6th Cir. 2013) (quotation omitted). As in *Rudd*, the ALJ may find that the claimant can perform light work even where no doctor corroborates that assessment. *Id*. The ALJ was thus not obligated to draft an RFC assessment which comported with one drafted by a physician, and was instead entitled to create an RFC based on his evaluation of the available medical evidence.

*Id*.; *see also Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401-02 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.") (citing *Shepard v. Comm'r of Soc. Sec.*, 705 Fed.Appx. 435, 442–43 (6th Cir. 2017) ("An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner.")); *Williams v. Comm'r of Soc. Sec.*, 2017 WL

8

4541355, at *3 (6th Cir. Mar. 1, 2017) (finding that substantial evidence, which included treatment notes and claimant's daily activities but no medical opinion as to the claimant's limitations, supported an RFC for light work with additional limitations).

In this case, where the ALJ considered and discussed the relevant medical and other record evidence – including Gant-Holmes's treatment notes, MRI and imaging studies, as well as her testimony and reports, the Court finds that the ALJ acted squarely within his authority in formulating Gant-Holmes's RFC. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [her] residual functional capacity.") (internal quotations omitted).

For all of these reasons, the Court concludes that the ALJ's RFC finding is supported by substantial evidence.

### 2. *In Formulating Gant-Holmes's RFC, the ALJ Did Not Erroneously Fail to Conduct a Function-by-Function Assessment*

Next, Gant-Holmes argues that the ALJ did not comply with SSR 96-8p because he failed to include "function-by-function assessment" in his decision. (Doc. #12 at 1, 9, 12 (citing *Stratton v. Astrue*, 987 F. Supp. 2d 135, 2012 WL 1852084, *11-12 (D.N.H. 2012) (citing SSR 96-6p). But, the Sixth Circuit has expressly rejected this very argument, stating:

> … "Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." … "[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (3d Cir. Dec. 19, 2000) (internal citations omitted)); *see also Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007) (holding that the ALJ met

the requirements of SSR 96-8p where the medical evidence supported an assessment of medium work capacity). Here, the ALJ discussed Gant-Holmes's testimony and reports of symptoms, as well as the medical records – including that she managed her pain primarily through over the counter Motrin and prescription Ultram (which, the latter she declined due to it working just as well as Motrin). (Tr. 22, 271). She never followed through with two pain clinic referrals by two different treating physicians. (Tr. 22, 275, 364). The ALJ also noted that Gant-Holmes reported to her doctor that her back pain is mild-to-moderate in nature, and intermittent. (Tr. 22, 442). And, the ALJ noted that Gant-Holmes takes care of her young grandchildren on a "full-time basis." (Tr. 22, 37). The ALJ then reasonably determined that Gant-Holmes is capable of performing light work, except only simple, routine, and repetitive work instructions, with no exposure to moving machinery or unprotected heights, and she can only occasionally bend, turn, crouch, stoop, climb, crawl, and kneel, nor can she walk more than two city blocks at any given time. (Tr. 20). No more was required. *See White v. Colvin*, 2015 WL 5210243, at *12 (E.D. Mich. Sept. 3, 2015) ("Where, as here, the ALJ provided a narrative discussion of a claimant's symptoms, their effect on the claimant's work, and how he reached those conclusions, the ALJ's narrative substantially complied with the requirements of SSR 96-8p.").

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #14**) be **GRANTED**, Gant-Holmes's Motion for Summary Judgment (**Doc. #12**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

| | |
|---|---|
| Dated: June 4, 2019<br>Ann Arbor, Michigan | s/David R. Grand<br>DAVID R. GRAND<br>United States Magistrate Judge |

### **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 4, 2019.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager
